Date signed September 13, 2007



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re | * | |
| RICHARD L. CUTAIO, JR. and PAMELA L. CUTAIO, | * | Case No. 06-17963-JS |
| | * | |
| Debtors | | |
| | * | Chapter 13 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *MEMORANDUM OPINION OVERRULING DEBTORS' OBJECTION TO CLAIM OF DOMINION FINANCIAL SERVICES, LLC*

This matter was heard upon the objection of the debtor, Pamela L. Cutaio, to the claim of Dominion Financial Services, LLC. For the reasons stated, the objection will be overruled.

### *FINDINGS OF FACT*

1. On December 8, 2006, the debtors, Richard L. Cutaio and Pamela L. Cutaio, filed the instant Chapter 13 case in this Court.

2.  On March 1, 2007, the debtors filed an objection [P. 15] to Claim No. 5, the claim of Dominion Financial Services, LLC ("Dominion"), in the amount of $24,657.06.

3.  The claim was alleged to have originated when Jeanine C. Little, the debtors' daughter, purchased the entire membership interest in a Maryland limited liability company known as DP West 65, LLC ("DP West").  The sole asset of DP West was a parcel of real property known as 3138 Normount Avenue located in Baltimore City (the "Normount Property").

4.  On November 16, 2002, Ms. Little obtained a loan from Dominion in the amount of $50,000 in order to purchase the membership interest in DP West.  The loan was alleged to be secured by a purchase money deed of trust on the property, a personal guaranty signed by Ms. Little and an indemnity deed of trust (the "IDOT") executed by the debtors.  Debtors' Exhibit No. 1.

5.  The IDOT was alleged to provide the debtors' property, identified as 2631 Proctor Lane, Baltimore County, Maryland (the "Proctor Property"), as additional collateral for the loan.  At the hearing on the objection, the debtor, Richard L. Cutaio, acknowledged that he and Mrs. Cutaio executed the IDOT.

6.  Dominion did not file a guaranty agreement from the debtors with its proof of claim.  Richard Cutaio testified that he only signed one document at the loan closing, and that document was the IDOT, not any personal guaranty.

7. On February 3, 2004, the Normount Property was vandalized. Thereafter, in settlement of the damage claim, the insurance carrier issued a check in the amount of $5,594.36, made payable to Ms. Little and Dominion jointly.

8. Patricia Koehler, a friend of Ms. Little, testified that she delivered both the insurance check that Ms. Little indorsed to Dominion and a personal check for one mortgage payment to one Fred Lewis, a representative of Dominion, who refused to accept them.

9. Ms. Koehler testified that she could not explain to Mr. Lewis whether Ms. Little was tendering the insurance check to be applied to the loan balance or to be used for repairs. After Mr. Lewis refused to accept either check, Ms. Koehler mailed the checks back to Ms. Little.

10. After Ms. Little and DP West defaulted on the mortgage, Dominion foreclosed on the Normount Property. On November 12, 2004, Dominion sold the property at foreclosure and the sale was ratified by the Circuit Court for Baltimore City. Dominion Exhibit No. 1.

11. An Auditor's Report found that DP West was liable for a deficiency in the amount of $17,056.24.

12. No exceptions were filed to the foreclosure sale or to the audit. Richard Cutaio testified that he did not receive a copy of the auditor's report although he had actual knowledge of the foreclosure through communications with his daughter.

13. After the foreclosure was ratified, Dominion sought to foreclose the IDOT secured by the Proctor Property owned by the debtors. In response, the debtors filed the instant Chapter 13 bankruptcy case. On Schedule D, the debtors listed the claim of Dominion as disputed.

14. On February 27, 2007, Dominion filed Claim No. 5 as a secured claim based upon the IDOT in the amount of $24,657.06.

15. The bases of the debtors' objection to the claim are that they did not execute a personal guaranty when they executed the IDOT; that they were discharged from their obligation under the IDOT by the failure of Dominion to apply the proceeds of the insurance check to the loan balance or to use the funds to repair the Normount property; as guarantors, the debtors were entitled to receive notice of the foreclosure of the Normount property, which they allege they did not receive, and therefore did not object to its ratification; and that the sale by Dominion of the Normount property in its damaged condition was not commercially reasonable.

*CONCLUSIONS OF LAW*

1. This Court has subject matter jurisdiction over the instant objection to claim, which is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Debtors have no personal liability because there is no evidence that they signed a guaranty agreement. Dominion did not supply the court with a guaranty agreement in its proof of claim, and Richard Cutaio testified that he and Pamela Cutaio signed only one document, the IDOT, at the closing of the loan.

3. Under Md. Code. Ann., Cts & Jud. Proc § 5-901(1), "an action may not be brought to charge a defendant on any special promise to answer for the debt, default, or miscarriage of another person" unless such promises are in writing and signed by the party to be charged. Because there is no written guaranty agreement, the Court is precluded from finding debtors personally liable as guarantors. *Bessette v. Weitz*, 148 Md. App. 215, 235, 811 A.2d 812, 823 (2002).

4. Dominion cites *Springhill Lake Investors, Ltd. v. Prince George's County*, 114 Md. App. 420, 690 A.2d 535 (1997), for the proposition that the IDOT "speaks for itself," rendering a personal guaranty unnecessary. In *Springhill*, the Court wrote:

> An indemnity deed of trust is but one type or class of a deed of trust. It is also a security device. The principal difference, however, is that, under an indemnity deed of trust, some third party has agreed to act as the guarantor of the borrower by placing its property in trust for the

benefit of the beneficiary, thereby agreeing to bear the loss should the borrower default.

*Springhill*, at 428.

5. Although cited by neither party, the United States District Court for the District of Maryland recently issued an opinion further clarifying the legal status of indemnity deeds of trust. *See Mercantile-Safe Deposit & Trust Co. v. Chicago Title Ins. Co.*, 2007 WL 892103 (D. Md. Mar. 20, 2007). In *Mercantile-Safe Deposit*, the District Court (Blake, J.) ruled that an indemnity deed of trust secured not only the guaranty in that case, but also the underlying promissory note. *Mercantile Safe-Deposit*, at *5-*6.

6. In the instant case, this Court finds the IDOT does not create any personal liability on the part of debtors. Unlike *Springhill* and *Mercantile Safe-Deposit*, the debtors never signed a personal guaranty agreement which would have created personal liability. However, the IDOT serves as security for the underlying promissory note issued by DP West. Although that promissory note was not filed with Dominion's proof of claim, its existence is not in dispute. Therefore, Dominion's proof of claim is sufficient under Bankruptcy Rule 3001.

7.  Accordingly, Dominion has a secured claim against the Proctor Property which is proper under 11 U.S.C. § 101(5).  *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L. Ed.2d 66 (1991).

8.  In addition, Dominion's secured claim was not diminished by any alleged tender of payment to Dominion.

9.  Debtors argue that under Md. Code Ann., Comm. Law § 3-603, Ms. Little's obligation to Dominion should have been either reduced or discharged when her friend Patricia Koehler delivered the check to Fred Lewis at Dominion and Dominion rejected it.  The debtors argue that the delivery constituted tender of payment.  Section 3-603 states that:

> (a) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.
>
> (b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

*Id*.  However, under Maryland law, "tender" is defined as "an "an offer to perform a condition or obligation, coupled with the present ability of immediate performance, so that if it were not for the refusal of cooperation by the party to whom tender is

made, the condition or obligation would be immediately satisfied." *Platsis v. Diafokeris*, 68 Md. App. 257, 262, 511 A.2d 535, 537 (1986) (*quoting Chesapeake Bay Dist. Co. v. Buck Dist. Co.*, 60 Md. App. 210, 214, 481 A.2d 1156, 1158 (1984). A tender "must be either in the exact amount due, or a larger amount without requiring the making of change." *Id*.

10. The presentation of the check by Ms. Koehler does not constitute tender of payment. It was not for the exact amount due, nor would it immediate resolve any condition or obligation. In fact, it was unclear for what purpose the check was being offered. Because Ms. Koehler could not tell Mr. Lewis the reason she was giving him the insurance check, Dominion could not know whether Ms. Little wanted the check applied to make repairs or towards the loan balance. Dominion was not obligated to accept the check to make repairs nor was it obligated to accept early payment on its loan. Accordingly, Dominion was not obligated to accept a check when it was unclear for which of two possible purposes the check was being tendered, and when it would not have been obligated to accept the check for either purpose.[1]

---

[1] Similarly, Dominion is not liable for any increased risk to Debtors as guarantors as a result of its refusal to accept Ms. Little's check from Ms. Koehler. Because it was unclear for what purpose the check was being offered, Dominion had no duty to accept it.

11. Dominion may have been obligated to accept the mortgage check which accompanied the insurance check which Ms. Little gave to Ms. Koehler to give to Dominion. However, the time to object to Dominion's refusal to accept this check has passed. Under Maryland law, the ratification of a foreclosure sale is *res judicata* as to the validity of that sale. *Manigan v. Burson*, 160 Md. App. 114, 120 862 A.2d 1037, 1041 (2004). Neither the debtors nor Ms. Little filed any objections to the foreclosure sale or any exceptions to the auditor's report during the appropriate times. They cannot do so now.[2]

12. The debtors claim they did not receive notice of the auditor's report. They admit that they had actual knowledge of the foreclosure sale but deny they received notice concerning when exceptions to the auditor's report were due. The debtors cite *Gambo v. Bank of Md.*, 102 Md. App. 166, 648 A.2d 1105 (1994), for the proposition that, as guarantors, the debtors were deprived of proper notice of the foreclosure sale.

13. In *Gambo*, the court held that a guarantor was equivalent to a debtor, and was thus entitled to notice of a private sale of van equipment that was used as collateral. *Gambo*, at 169. Unfortunately for the debtors, the *Gambo* case concerned

---

[2]The finding of *res judicata* resulting from the ratification of the foreclosure sale of the Normount property is another bar to the Debtor claiming the presentation of the insurance check constituted tender of payment under Commercial Law § 3-603. Res judicata also bars Debtors from now claiming the foreclosure sale of the Normount property was commercially unreasonable.

a private sale of personal property pledged as security. Thus, *Gambo* was governed by Article 9 of the Maryland Commercial Code.

14. The Maryland Rules are more clear on who is entitled to notice of a foreclosure of real property or notice of an auditor's report. Maryland Rule 14-204(b) and Md. Code Ann., Real Prop. § 7-105 state that notice of the foreclosure sale must be given only to the record owner and holders of subordinate interests. Maryland Rule 14-305(b) adds that notice of the auditor's report must be published in a newspaper of sufficient circulation. Neither rule nor statute mentions a guarantor, and Maryland courts have been reluctant to expand upon the parties to whom notice must be given. *See, e.g., Redland Genstar, Inc. v. Mahase*, 155 Md. App. 72, 841 A.2d 413 (2004).

15. Accordingly, proper notice of the foreclosure sale was given. Therefore, debtors may not now object to the foreclosure sale or to the auditor's report, especially considering that the debtors had actual knowledge of the foreclosure sale.

WHEREFORE, the debtors' objection to the allowance of claim will be OVERRULED.

ORDER ACCORDINGLY.

cc: Richard L. Cutaio, Jr. and Pamela L. Cutaio
2631 Proctor Lane
Baltimore, Maryland  21234
Debtors

James L. Wiggins, Esquire
One East Lexington St. Suite 505
Baltimore, Maryland  21202
Counsel to the Debtors

Dominion Financial Services, LLC
1029 North Calvert Street
Baltimore, Maryland  21202
Claimant

Dennis W. King, Esquire
Danoff and King, P.A.
409 Washington Avenue, Suite 810
Towson. Maryland 21204
Counsel to Dominion Financial Services, LLC, Claimant

Ms. Ellen W. Cosby
P. O. Box 20016
Baltimore, Maryland  21284-0016
Chapter 13 Trustee

Office of the United States Trustee
U.S. Courthouse, Suite 2625
101 West Lombard Street
Baltimore, Maryland 21201